## Androscoggin Bridge *v.* Bragg.

The charter of a bridge corporation required that the gate should be kept open in the absence of the toll-gatherer. *Held*, that persons passing the bridge under such circumstances could not be required to pay toll.

One who has license to cross a toll-bridge without paying toll till such time as referees should settle a claim in his favor against the corporation, can not be charged with toll till such settlement or till notice of a revocation of the reference by the corporation.

Assumpsit for the use of the plaintiffs' bridge from January 1, 1835, to May 8, 1841, $200.

Plea, the general issue and a set-off.

The charter was produced incorporating the proprietors of the Androscoggin Bridge with the usual grant of powers, the 4th section of which provides, that "at all times when the toll-gatherer shall be absent from his duty, the gate shall be left open." Approved June 1816. The organization of the company under the charter and the erection of a bridge was admitted.

Androscoggin Bridge *v.* Bragg.

It appeared in evidence that the bridge became impassable in 1833 and was rebuilt in 1835; that the defendant lived within a few rods of the bridge and was a proprietor of land on both sides of the river; that he had frequent occasions to pass, and he and his family and cattle did often pass. The evidence tended further to show that the bridge was rebuilt, a gate erected, and a toll-gatherer appointed to take toll, who continued to do so till the defendant cut away the gate in March 1837. But he was directed to let the defendant and his family, &c., pass free of toll,. on account of a claim which the defendant made for the use of land on which the bridge was erected, and for work and labor done on the bridge and materials found; and further that an agreement was made between the parties to refer this claim to referees, and if they awarded him any thing on his claim, it should be deducted from his toll and he should pay the balance; that referees were chosen but never met or considered the matter; that the toll-gatherer furnished him with a key to unlock the gate, and that he passed without paying toll; and that no account was kept with him and no demand made upon him for toll until the commencement of this suit. That in March 1837 the defendant cut down the gate, and thereafter no gate was erected and no toll-gatherer provided, and every body was allowed to pass without any demand of toll, the defendant with the rest.

The court instructed the jury that if they were satisfied that the understanding of the parties was, that the defendant should pass without paying any toll until his claim could be determined by referees or otherwise, the plaintiffs could not maintain any action against him until they notified him that they revoked that contract; and that they might consider the facts that he was furnished with a key and that no account was kept with him by the toll-gatherer, as circumstances tending to show that such was the understanding. But if they found that the in-

Androscoggin Bridge *v.* Bragg.

tention was only that he should not be required to pay his toll as he passed, but that it was to be finally paid after deducting his claim as the referees should settle it, they might find the amount due up to the time the gate was cut away, and deduct the defendant's claim and find for the balance only, if there was any balance; and further if they found that the plaintiffs kept no toll-gatherer after the gate was cut down, and demanded toll of none, and let all others go free, they were precluded from collecting toll of the defendant after they ceased to keep a toll-gatherer.

To these instructions exception was taken by the plaintiffs, who upon the return of a verdict for the defendant also moved to set the same aside for the supposed error, and for a new trial.

The questions were transferred to this court.

*Wells,* for the plaintiffs. The plaintiffs were bound by no agreement to refer, such not having been made by one having authority to bind the corporation.

The power to stop passengers by means of a gate or otherwise is only cumulative. *Chesley v. Smith,* 1 N. H. 20. The liability to pay depends upon the use and not upon the presence of the toll-gatherer. 10 Johns. 390.

*Young,* for the defendant. The case is settled by the jury. No claim exists for toll while the gate remains open and the toll-gatherer is absent. If the gate was cut down, still the toll-gatherer might have remained to demand toll.

*Fletcher,* for the plaintiffs in reply.

GILCHRIST, J. The case finds that the toll-gatherer was directed to let the defendant pass free, on account of a claim which he made for the use of the land. His claim

was agreed to be referred, and if any thing was awarded to the defendant on it, it should be deducted from his toll, and he should pay the balance. But no reference was had, and no demand made on him until this suit.

It is very clear, taking these facts together, that the defendant was to pass free until there was in some way a settlement of his claim. He was not to pay toll, on account of his claim, and that claim was to be referred. How long did this agreement last? Certainly until the adverse party was notified to the contrary. The defendant might perhaps say that although the agreement to refer was revoked, still he was to pass free on account of his claim. That however is not the plain meaning of the facts stated, considering them together. A revocation of the agreement to refer, would revoke the permission to pass free; and until something of this kind was done, the defendant could not be compelled to pay for using the bridge, at a time when he was using it under an agreement that he should not pay. The instruction on that head was therefore correct.

The charter provides that when the toll-gatherer is absent, the gate shall be left open. In such case then the law required the gate to be open. This was for some purpose. It can hardly be supposed that every man who passed the bridge when no one was present to demand and receive his toll, was meant to be subjected to an action for an omission of that duty which he had every reason to suppose was not intended to be required of him.

If there were no gate and no toll-gatherer, and all persons were permitted to pass free of all demand for toll, this would raise a presumption, in the absence of any provision in the charter, that the corporation had no intention of taking toll. The case would be somewhat analogous to that of a dedication of land for a highway. It would be a holding out to the world in every way in which the corporation could act, short of an express per-

mission, that all persons might pass without payment. And it would often, probably, induce persons who might not otherwise pass the bridge, to travel over it. This would not be the case of an express permission to pass, as of an assent that he might pass, given under a misapprehension of the rights of the party, as in *Chesley* v. *Smith*, 1 N. H. 20. That case stands well enough without decision in this.

The duty of the toll-gatherer is to open the gate and to receive the tolls. Perhaps the matter would have been well enough if there had been any person there to demand and receive the tolls. Perhaps a gate might exist substantially, if the toll-gatherer were there. It is erected for the convenience of the corporation. If the defendant cuts it down, that does not hinder an agent from being placed there. It is very common for a gate to be left open while the toll-gatherer is there. That is no permission to pass free of toll. And the statute does not provide for such a case, but for the more important one of the absence of the toll-gatherer.

We think therefore that it was properly left to the jury to inquire upon the evidence, whether there was a general license for all persons, including the defendant, to pass the bridge without the condition of paying toll.

The consequence is there must be

*Judgment on the verdict.*